UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. CR16-0018 |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1347: Health Care Fraud; 42 U.S.C. § 1320a-7b(b)(1)(A): Illegal Remunerations for Health Care Referrals; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 2(b): Causing an Act to be Done] |
| BYONG CHUN MIN, aka "David Min," and JASON S. MIN, | |
| Defendants. | |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. §§ 1347, 2(b)]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

Defendants

1.  Defendant BYONG CHUN MIN, also known as ("aka") "David Min" ("defendant BYONG"), was a resident of Irvine, California, within the Central District of California.

2. Defendant JASON S. MIN ("defendant JASON") was a resident of Irvine, California, within the Central District of California. Defendant JASON is the son of defendant BYONG.

3. Beginning in or about October 2009 and continuing through in or about January 2016, defendants BYONG and JASON owned, operated, and controlled Glory Rehab Team, Inc., aka "Dream Hospital," aka "Daesung Clinic," a California corporation ("Glory Rehab"), which was located in Orange County, within the Central District of California.

Co-Schemers

4. Co-schemer Marlon Songco was the president of Rehab Dynamics, Inc., a California corporation ("Rehab Dynamics"), which was located at various sites in Los Angeles and Orange Counties, within the Central District of California.

5. Co-schemers Joseff Sales ("Sales") and Danniel Goyena ("Goyena") owned, operated, and controlled Rehab Dynamics and RSG Rehab, Inc. ("RSG"). RSG also was a California corporation, with locations at various sites in Los Angeles County, within the Central District of California.

6. A bank account for Rehab Dynamics was maintained at J.P. Morgan Chase Bank, N.A., with account number ending in 5060 (the "Rehab Dynamics Bank Account"). The bank accounts for RSG were maintained at J.P. Morgan Chase Bank, N.A., with account numbers ending in 5234, 2189, and 2698 (the "RSG Bank Accounts").

The Medicare Program

7. Medicare was a health care benefit program, affecting commerce, that provided medical benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency

2

operating under the authority of the United States Department of Health and Human Services ("HHS").

8.  Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

9.  Health care providers who provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

10. CMS contracted with private companies to certify providers for participation in the Medicare program and monitor their compliance with Medicare standards, to process and pay claims, and to perform program safeguard functions, such as identifying and reviewing suspect claims.

11. To obtain reimbursement from Medicare, a provider had to apply for and obtain a provider number. By signing the provider application, the provider agreed to (a) abide by Medicare rules and regulations and (b) not submit claims to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of their truth or falsity.

12. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number, which enabled the provider to submit claims to Medicare for services rendered to Medicare beneficiaries.

13. Medicare reimbursed providers only for services, including physical therapy, that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician or a qualified physician's assistant acting under the supervision of a physician, and were provided in accordance with

3

Medicare regulations and guidelines that governed whether a particular service or product would be reimbursed by Medicare.

14. Medicare required that physical therapy services be performed by (a) a physician, (b) a physical therapist ("PT"), or (c) a physical therapy assistant ("PTA") acting under the direct supervision of a physician or PT. "Direct supervision" required that the doctor or PT be physically present in the same office suite and immediately available to provide assistance and direction throughout the time the PTA was performing physical therapy services. Physical therapy services provided by aides or physical therapy students were not reimbursable by Medicare, regardless of the level of supervision.

15. Medicare did not cover acupuncture or reimburse providers for acupuncture services. Medicare did not cover massages unless they were therapeutic massages provided by a licensed therapist as part of the beneficiary's plan of care.

B.   THE SCHEME TO DEFRAUD

16. Beginning in or about May 2010, and continuing until at least in or about April 2012, in Los Angeles and Orange Counties, within the Central District of California and elsewhere, defendants BYONG and JASON, and co-schemers Sales, Goyena, and Songco, together with others known and unknown to the Grand Jury, knowingly, willfully, and with the intent to defraud, executed and attempted to execute a scheme and artifice: (1) to defraud a health care benefit program, namely, Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (2) to obtain, by means of material false and fraudulent pretenses and representations and the concealment of material facts, in connection with the delivery of and payment for

4

health care benefits, items, and services, money under the custody and control of Medicare.

17. The fraudulent scheme operated, in substance, in the following manner:

    a. Co-schemers Sales, Goyena, and Songco paid Glory Rehab for defendants BYONG and JASON's referrals of Medicare beneficiaries to Rehab Dynamics and RSG.

    b. Defendants BYONG and JASON recruited Medicare beneficiaries to Glory Rehab. The Medicare beneficiaries supplied their Medicare cards, HICNs, and patient information to Glory Rehab, and defendants BYONG and JASON subsequently provided this information to co-schemers Sales, Goyena, and Songco at Rehab Dynamics and RSG.

    c. As defendants BYONG and JASON knew, co-schemers Sales, Goyena, and Songco hired licensed PTs, many of whom worked full-time elsewhere, to perform only a small portion of patient evaluations, without any follow-up treatment, for Medicare beneficiaries at Glory Rehab. As defendants BYONG and JASON knew, Sales, who was a PT, evaluated some, but not all, of these beneficiaries and created plans of physical therapy treatment for them, even though, many of these beneficiaries never received any physical therapy services.

    d. While at Glory Rehab, Medicare beneficiaries often received only massages and acupuncture (services defendants BYONG and JASON knew were not covered by Medicare) from individuals not licensed to perform physical therapy.

    e. Defendants BYONG and JASON and co-schemers Sales, Goyena, and Songco provided information to Accubill Medical Billing Services ("Accubill"), including the names, HICNs, and other patient information for the Glory Rehab Medicare beneficiaries, as well as

falsified records that made it appear as though these Medicare beneficiaries had received physical therapy treatments from specific PTs hired by Rehab Dynamics and RSG, knowing and intending that Accubill would use this falsified information to submit false and fraudulent claims to Medicare for physical therapy.

   f. As a result of the claims submitted by Accubill, Rehab Dynamics and RSG received payment from Medicare for those false and fraudulent physical therapy claims, and the payments were deposited into the Rehab Dynamics and RSG Bank Accounts, to which co-schemers Sales, Goyena, and Songco had joint access, and over which they exercised joint control.

   g. For the Medicare payments deposited into the Rehab Dynamics and RSG Bank Accounts, co-schemers Sales, Goyena, and Songco paid kickbacks to defendants BYONG and JASON for the referral of the Glory Rehab Medicare beneficiaries to Rehab Dynamics and RSG. These kickbacks were approximately 55 percent of the Medicare payments received by Rehab Dynamics and RSG from the submission of the fraudulent claims to Medicare for physical therapy.

   h. Between in or about May 2010 and continuing until at least in or about April 2012, Rehab Dynamics and RSG obtained and received from Medicare, and deposited into the Rehab Dynamics and RSG Bank Accounts, approximately $587,964 from fraudulent and improper claims submitted to Medicare, primarily for physical therapy, on behalf of Medicare beneficiaries recruited at Glory Rehab by defendants BYONG and JASON. Defendants BYONG and JASON, through Glory Rehab, received approximately $323,380 of this amount for their participation in the fraudulent scheme, including in particular for their recruiting the Glory Rehab Medicare beneficiaries and for their

providing these beneficiaries' Medicare information to co-schemers Sales, Goyena, and Songco for use in creating and submitting to Medicare fraudulent claims for physical therapy.

C. <u>EXECUTIONS OF THE FRAUDULENT SCHEME</u>

18. On or about the dates set forth below, within the Central District of California, and elsewhere, defendants BYONG and JASON, together with others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute the fraudulent scheme described above, by submitting and causing to be submitted to Medicare the following false and fraudulent claims:

| COUNT | DATE CLAIM SUBMITTED | CLAIM |
|---|---|---|
| ONE | 1/31/2011 | Claim number 551111031903800 for $80.00 for manual physical therapy (97140) purportedly provided on or about January 26, 2011 to beneficiary H.L. by physical therapist L. Sayat |
| TWO | 2/22/2011 | Claim number 551111053915710 for $80.00 for therapeutic exercises (97110) purportedly provided on or about February 7, 2011 to beneficiary H.L. by physical therapist L. Sayat |
| THREE | 3/15/2011 | Claim number 551811074542630 for $80.00 for manual physical therapy (97140) purportedly provided on or about March 10, 2011 to beneficiary A.K. by physical therapist L. Sayat |
| FOUR | 1/19/2012 | Claim number 551912023188920 for $80.00 for therapeutic exercises (97110) purportedly provided on or about January 3, 2012 to beneficiary K.P. by physical therapist L. Sayat |
| FIVE | 1/19/2012 | Claim number 551912023188910 for $80.00 for therapeutic exercises (97110) purportedly provided on or about January 3, 2012 to beneficiary H.P. by physical therapist L. Sayat |

| SIX | 3/1/2012 | Claim number 551912061030192 for $100.00 for physical therapy evaluation (97001) purportedly provided on or about February 1, 2012 to beneficiary J.L. by physical therapist L. Sayat |

## COUNTS SEVEN THROUGH TWELVE

[42 U.S.C. § 1320a-7b(b)(1)(A)]

19. The Grand Jury hereby repeats and realleges paragraphs 1 through 15 and 17 of this Indictment as if fully set forth herein.

20. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants BYONG and JASON, together with others known and unknown to the Grand Jury, knowingly and willfully solicited and received remuneration, namely, checks payable in the approximate amounts set forth below, drawn on the RSG Bank Accounts, in return for referring individuals to RSG for physical therapy-related services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DATE | CHECK |
| --- | --- | --- |
| SEVEN | 2/4/2011 | Check number 1232, drawn on the RSG Bank Accounts, in the amount of $4,518.88, payable to Glory Rehab |
| EIGHT | 4/13/2011 | Check number 1266, drawn on the RSG Bank Accounts, in the amount of $5,769.11, payable to Glory Rehab |
| NINE | 7/8/2011 | Check number 1346, drawn on the RSG Bank Accounts, in the amount of $3,408.97, payable to Glory Rehab |
| TEN | 12/15/2011 | Check number 1587, drawn on the RSG Bank Accounts, in the amount of $5,819.24, payable to Glory Rehab |
| ELEVEN | 3/29/2012 | Check number 2043, drawn on the RSG Bank Accounts, in the amount of $6,629.77, payable to Glory Rehab |
| TWELVE | 4/24/2012 | Check number 2082, drawn on the RSG Bank Accounts, in the amount of $2,975.97, payable to Glory Rehab |

COUNTS THIRTEEN AND FOURTEEN

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

21. The Grand Jury hereby repeats and realleges paragraphs 1 through 15 and 17 of this Indictment as if fully set forth herein.

22. On or about the dates set forth below, in Los Angeles County, within the Central District of California, defendants BYONG and JASON, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification of other persons, namely, the names and HICNs of the Medicare beneficiaries identified below, during and in relation to felony violations of Title 18, United States Code, Section 1347, as charged in the related counts of the Indictment identified below.

//
//

| COUNT | DATE | BENEFICIARY (HICN) | RELATED COUNT OF INDICTMENT |
|---|---|---|---|
| THIRTEEN | 1/19/2012 | K.P. (xxxxx0818A) | COUNT FOUR |
| FOURTEEN | 1/19/2012 | H.P. (xxxxx4917A) | COUNT FIVE |

A TRUE BILL

/s/
_____
Foreperson

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

BYRON J. MCLAIN
Assistant United States Attorney
Major Frauds Section